is the case of People of the State of Illinois v. Brett Sharp. We have here Mr. Larry Wells for the appellant and Mr. Patrick Daly for the appellee. Are you prepared? Have you switched May it please the court, counsel. My name is Larry Wells and I'm here representing Brett Sharp and his boss. Mr. Sharp was convicted of residential burglary. He raised several issues before this court and he would concentrate his presentation today on the prosecutor's conduct and the matter of the letter in this record that shows the motive of his brother, Kent Sharp. Kent Sharp, the defendant's brother, was the key witness for the prosecution. The reason I say that is because Kent Sharp testified that his brother, the defendant here, showed up with the proceeds of the residential burglary shortly after the residential burglary and confessed to committing the residential burglary. So if the jury believed Kent Sharp's brother, then they could find the defendant guilty assuming that they also found that this evidence was sufficient to prove guilty on reasonable doubt, certainly while the evidence is contained therein. So this key witness formed the centerpiece of this case and yet Kent was more closely connected to this residential burglary Kent Sharp was caught red-handed with the stolen jewelry. He had the antique watch. He had the ring. He was caught red-handed and his response was, My brother did it. Classic. And he wasn't just caught with the proceeds. He also, with the stolen jewels, he admitted he had the proceeds. He took the proceeds and scattered them through the countryside so they couldn't be found. And there's this connection to the car. The car is a crucial part of the evidence in this case because the victims of this residential burglary came back from a Christmas party and they see a strange car in their driveway and that door kicked in. Well, they write down the license number, go to the neighbors, call the cops. Well, it's the defendant's car. That's how he's connected to the case initially. But it's not just him that's connected to the car because Kent admits that he doesn't have access to any car himself. His wife's car has been repossessed. He has a truck. It's in the process of being repossessed so he doesn't use it. He has to get it out so they won't find it and have any money. So he's borrowing cars. And one of the cars he's borrowing is the defendant's car. He admits it. So he has access to the defendant's car during the exact time that this residential burglary occurs. But that's not all. He doesn't just have the stolen jewels. He doesn't just admit to getting rid of the proceeds. He's not just connected to the car. He admits he had that car the next day and disposed of it. Had it towed away. He disposed of the getaway car. And on top of that, when the cops show up, he hides from them and lies to them. What about the cigarette butt? I'm getting to the cigarette butt. The cigarette butt is outside the point of entry. And of course it's not like a fingerprint. The defendant doesn't have to be there to attach a cigarette butt. He doesn't have to touch anything on that scene. His car is there. We know his car is there. So we know his DNA is within a short distance of that point of entry anyway. So his brother planted it? Or he could have had stuff to his shoe. Doesn't really matter. All we know is it's not required that the defendant placed there. Now, with this kind of case, it's obvious what the state is supposed to do. They're supposed to come in front of the jury and they're supposed to say, look, we know we've got limitations in this case. We've got a bad witness here, Kent Sharp. You should believe him anyway. You saw him testify. He testified to his brother's confession. You should observe it, believe it, and convict the defendant. And we have circumstantial evidence. Okay, it's outside. It's not DNA that's there, but it connects to the defendant. It can't be excluded. That's supporting circumstantial evidence. And you should find that sufficient. That's what he should have done. But that's not what he did. That's not what he did. Instead, he resorted to dirty tricks. He reversed the burden of proof. He told the jury that in order to find the defendant not guilty, in order to find the defendant not guilty, what he had to do was find that the alibi was truthful and that the defendant planted the cigarette button. And then he said, there's no evidence that Kent Sharp, the brother, had motive to frame the defendant. How is that different than commenting and attacking the defense's theory, an alibi? Oh, well, because it's perfectly fine for the prosecutor to say, you should not believe. You should not believe the testimony of the alibi witness. It is completely improper to say you can't acquit unless you do believe the alibi witness. Let's assume, for the sake of argument, let's make it as simple as possible. Let's say that the jury did not believe a single piece of evidence presented by anyone, neither side. They didn't believe anything. And the prosecutor gets up and says, in order to acquit, you have to believe the alibi witness. If the jury followed that argument, they have to acquit. I mean, that almost sounds like it's taken out of context in the sense that wasn't this in the context of saying, you know, the evidence is so overwhelming that in order for you to acquit, you'd have to believe blah, blah, blah. That is also a real problem in the case. You're saying that's impermissible. Oh, yes, because of what the state is saying. If during the process of presenting evidence, we present a certain degree of evidence, the defendant has to prove to everybody. And of course, the rule is that the burden of proof remains on the state. The presumption of innocence remains with the defendant throughout the case, including during the deliberation to the jury. And what he said was, you look. The only way you can ignore the overwhelming evidence that proves this defendant guilty beyond a reasonable doubt, if you do two things, believe the girlfriend's story that he was with her on Christmas Day, and if you believe that Kent Sharp so hated his brother, he put his cigarette butt outside the home. But isn't he saying, essentially, that that just changes the balance? That then you haven't proven him guilty beyond reasonable doubt. I don't – I think there's an enormous difference between saying what they have to believe, and what he should have argued is that you should not believe. His duty was to make sure that they understood the burden was always on the state. And then the second part might be a little bit more clear. Now, I want to ask you to think a little bit about the second point. I suggest to you that you would have to believe to find that the overwhelming case to be presented in this case doesn't make sense, namely that Kent Sharp planted the cigarette butt. And, again, what he's saying is because a certain amount of evidence has been presented, the state no longer has a burden. After that, the defendant has the burden. You have to believe parts of the defendant's case in order to acquit. That's the state's argument, and that's, of course, the problem. But even worse than that is that the prosecutor lied to the jury about the motive. There is a letter in this record that the prosecutor knew about where Kent says, I tried to frame my brother for a separate crime, CF-191 sex crime. He says, I didn't know anything about that crime. The police came and he says, well, I didn't. He says, I had the stolen jewels. I got rid of the proceeds of this residential burglary. I was afraid I was going to be charged, and to curry favor with the prosecution, I made up lies about the defendant so that he would be convicted in CF-191, this separate sex crime. And yet the prosecutor argued to the jury that there was no evidence of a motive. Now, it's perfectly true that that letter was not admitted into evidence in this case,  because regardless of the condition of the evidence in that trial, the prosecutor has a duty not to argue falsely. And he knew that Kent had already confessed to trying to frame his brother on a serious felony. He knew that Kent didn't just have a motive to do it, but he had acted upon that motive. He confessed to acting upon that motive. And the only real question was, was Kent trying to do it again? Was he trying to frame his brother again? Had he framed his brother only once, or he framed him twice? Now, there's no way that a jury could perform a constitutionally required function unless it knew that Kent had already tried to frame his brother on a serious felony. Counsel didn't try to get the letter in. There's testimony about this in the trial. He says it was a trial strategy because he didn't want to open the door for this sex crime. Well, the lawyer didn't know it at all. Ignorance isn't a trial strategy. All he had to do was file a motion in limine to keep the irrelevant damaging parts of this letter out. It doesn't matter what this crime was. It doesn't matter whether the defendant was convicted of it or guilty of it or not guilty of it. The only thing that mattered is that Kent admitted he didn't know anything about it, that he knew he was caught with the goods in this case, and to get out of conviction in this case, he was lying to try to get his brother convicted about something he knew he didn't know anything about, CF-191, separate sex crime. And the jury speaker, he told him, do not concern yourself with what this was about. It was a serious felony, and then they submit the actual language from the letter, where he says, I didn't know anything about this, and I'd like the police to get my brother convicted. Thank you, Mr. Wells. You'll have the opportunity for some rebuttal. Mr. Daly. Good afternoon, Your Honor. Good afternoon. Counsel. Well, first of all, we're here on an argument across this room. There was no objection raised to any of these comments, so we are evaluating this in the framework of plain error or ineffective assistance to counsel, which is argued and is brief. I don't believe – I'm just going to go ahead and limit my comments to what Mr. Wells is able to discuss here. If the Court has any questions or anything else, I'll be happy to answer. I really – I guess you're going to find it's often the case that people will look at one thing and have very different viewpoints of something, and this is certainly one example of that. I would start, I guess, by looking at the prosecutor's comments, and I have them quoted in my briefing, and you can see what the prosecutor says. When you look at the cases involving the reversal of word of proof in the defendant's case, you often see arguments along the lines of how the defendant, I think, initially characterized the prosecutor's argument in this case, that you can't acquit unless you believe the alibi of witnesses, which, of course, is not what the prosecutor said at all. And that's not an insignificant distinction because, of course, that is a blatant example of reversal of word of proof. You can't find him guilty unless you believe the defendant's witnesses. Of course, the defendant doesn't carry any burden. My take on the prosecutor's comments is this. I presented to you overwhelming evidence. The defendant has presented to you evidence. My evidence is sufficient to convict, but it may not be sufficient to convict if you find the defendant's witnesses credible. Now, the defendant chose to put on evidence. The defendant chose to put on testimony, and that's going to be judged like any other evidence in the case, just like the State's case. And all the State was saying here was that here's our evidence, here's their evidence, balance the evidence, and you tell me. I feel that I have a case of overwhelming evidence, and you should find this defendant guilty. That's what the prosecutor said, and it was absolutely permissible for the prosecutor to comment on the strength of his case and the weakness of the defendant's case. Now, I'm sure Mr. Walsh is going to get up here and say, well, that's not what the prosecutor did. That's fine, I agree. We're not going to convince each other of this, probably. I would just ask this court to look at these comments and look at them in context and find that this case and these comments in no way, shape, or resemble the comments that were identified as error, reversible error, in the case of sight by the defendant. Now, I want to talk about also lying to the jury about the motive. I'm still not quite understanding this argument, so let me sort of state it out a little bit fuller here. The Ken Sharp, and a lot of what the counsel starts with, I don't disagree with. I mean, Ken Sharp's a shady character. He's got lots of convictions. He was the one popping the goods. He admitted as much as he was willing to. He's not a good guy. And there's evidence, though, that bolsters it. The license plate being observed at the residence, the DNA on the cigarette butt. That's fine. I'm not going to get into a debate about whether that's overwhelming, good, or whatever. But the point of the matter is this. I don't think that this motive, that there was anything that the prosecutor was hiding from the jury. Ken Sharp had been approached by an investigator in relation to a sexual assault charge that the defendant was facing. He was charged with defile, or was still in the process of being investigated, what being the case. This investigator came and talked to Ken Sharp and said, Well, Ken Sharp admitted that he gave false information, initially, about his brother's involvement in the sexual assault case. He then wrote a letter to the state's attorney's investigator and to his sexual assault charge defense attorney. He says, look, I lied about what I said about my brother's involvement in the sexual assault case. My reason for doing this is because this investigator came to me and said, hey, well, let me backtrack. The defendant was, or Ken Sharp was angry because he said that his brother had come to his residence and he had all his stolen goods and he had to have him take care of them. And this investigator said to him, you could be charged with possession of stolen goods. So he said, well, I don't want to be caught in this trap of being charged with something that my brother did. Because I didn't do anything wrong. I didn't even know there was stolen stuff. In fact, that's what he says in this letter to the rights of his attorney. Therefore, I gave false statements to the investigator about the sexual assault charge. Now, that's extremely probative and relevant in regards to the sexual assault charge. But what I don't understand is how it's relevant or probative of his falsehood with regards to the charge pending of the residential burglary. Now, that works its way into the defendant's third argument, which is the ineffective assistance of counsel. That, well, it could redact a lot of this information regarding the sexual assault charge. The defense attorney didn't want to go there. He's afraid he's going to open the door and complete this doctrine. He may dictate more evidence coming in that I'm comfortable with. I don't want the jury to know that my client had this charge. He was actually found to be convicted. The problem is, in the way it's sort of been characterized here, is it suggests that Brett Sharp, excuse me, Ken Sharp, had lied to the investigator about the residential burglary charge, but nothing could be more or less true. He told the investigator that this is what happened. He brought all the stuff to my house. I didn't do anything wrong. And he got a new understanding. He brought all the stuff to my house. I didn't do anything wrong. It's perfectly consistent. I don't understand what the impeachment value is. But what the falsehood is of the prosecutor is I agree. And I agree with counsel. There was no evidence of a motive. I mean, you know, if that is what we're going to limit it to, was he telling the truth and he said there's no evidence of a motive, well, I don't know if that's evidence of a motive or not. None of this is evidence of a motive. But taking it to the next step and saying that the prosecutor has a further duty to not lie to the jury about anything, anything, oh. He didn't. He simply didn't. There's motive to lie in the sexual assault case, clearly, because he didn't want to face charges for possession of stolen goods. But there's nothing at all to do with this case. And, of course, defense counsel, in the context here, if you're an effective assistant counsel, would recognize that. Well, if we're only going to tell the jury that he was afraid of he lied about charges and he lied about something and he didn't want to get in trouble for something, the jury's going to want to know exactly what it is that he was lying about. Well, he wasn't lying about this case. In fact, if you presented a complete picture of what happened there, you gave the same story now to an investigator that he gave during testimony tonight. So, you know, I don't see how the argument can be made that the prosecutor had committed this conduct. I stand by the jury with information at his disposal that this particular witness had a motive to lie. Whatever the motive is, with regards to the letter, it had nothing to do with this case. So, with regards to the balancing priorities, I'd like to end my briefs. I appreciate your time. Thank you. Thank you, Mr. Daly. Do you have a rebuttal, Mr. Wells? The transcripts of the relevant portions of the prosecutor's closing argument are attached to the original brief. So this court can see them in context and decide for itself what those meant. I encourage you to look there. I talk about being confused. I don't understand how a state can be confused. There's nothing in our briefs anywhere that alleges that we're saying that Kent admitted trying to frame his brother for this crime. He did not admit trying to frame his brother for this crime. He admitted trying to frame his brother for the sex crime. He says, quote, neither one of us knew anything about what Brett is being charged with. That's the sex crime. So we just started making up stuff. The truth is Connie and I know nothing about Brett's case at all. Brett's case at all, the sex crime. The reason I said the things I did is because I was threatened with this possession case. This is an RC-280. What possession case? This possession case, where he possessed the proceeds of the residential burglary. And he says further, he risked pissing the state off and possible charges. RC-280, 281. And what is he talking about? He's talking about the residential burglary. The one where the state says they didn't have any motive to frame the defendant. He fought with the proceeds. He admitted with the jewelry. He admits he destroyed the proceeds. And he used that exact manner to try to frame his brother as a reason to frame his brother in the sex crime. How could the jury possibly weigh that witness's credibility if they didn't know that he already acted on that motive to try to frame his brother on a matter he admitted he'd done nothing whatever about? The jury had to learn about that. Or they couldn't perform the motion. That was a denial of his right to confront the witness against him. It was ineffective assistance of counsel. And what's more, the prosecutor knew about that motive. And he told the jury there was no such evidence. Reminds me of a case where there was red stuff on a coat. And the prosecutor knew perfectly well it was paint. But evidence was admitted at the trial to suggest that it might be blood. And the prosecutor argued to the jury it was blood. He said, well, the inferences in front of the jury suggested it could be blood. Oh, no way. If you knew it was paint, you better not be saying it might be blood. And this guy knew that there was a motive. And he said there wasn't. He knew there was evidence. He said there wasn't any evidence. We ask this court to reverse its decision. Thank you, Mr. Wells. Mr. Daly, we'll take that.